UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MIKHAIL RUSLANOV,
(A-Number: 244-964-915)

      Petitioner,

    v.

WARDEN, CALIFORNIA CITY
CORRECTIONAL CENTER, et al.,

      Respondents.

No.  1:26-cv-01459-JLT-EGC (HC)

FINDINGS AND RECOMMENDATION TO
DENY THE PETITION FOR WRIT OF
HABEAS CORPUS

[21-DAY OBJECTION DEADLINE]

Petitioner is an immigration detainee proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

I.     <u>FACTUAL BACKGROUND</u>

Petitioner is a citizen and national of Russia who entered the United States on September 11, 2024, with a nonimmigrant visitor visa with authorization to remain for a period not to exceed 180 days. (ECF No. 1-1 at 2.) The visa expired on March 10, 2025, yet Petitioner remained in the country with no legal status thereafter. (*Id.*) On January 5, 2026, Immigration and Customs Enforcement officers arrested and detained Petitioner. (ECF No. 1 at 6.) Petitioner does not have any criminal convictions, but he has a pending misdemeanor charge for possession of narcotics/controlled substance. (ECF No. 1 at 7.)

On February 19, 2026, Petitioner filed the instant habeas petition challenging his

1

detention. (ECF No. 1.) Petitioner alleges that his continued detention without an individualized custody determination violates his due process rights. (*Id*.) He seeks immediate release, or an order requiring a prompt individualized bond hearing. (*Id*.)

On March 4, 2026, Petitioner was provided a bond hearing pursuant to 8 U.S.C. § 1226(a). (ECF No. 19-1.) The immigration judge denied Petitioner's request for custody redetermination finding he failed to meet his burden of proof that his release would not pose a danger to other persons or property. (ECF No. 19-1 at 4.)

On March 16, 2026, Respondent filed a response to the petition. (ECF No. 14.) On March 19, 2026, Petitioner filed a traverse. (ECF No. 15.) On April 13, 2026, Respondent provided a copy of the immigration judge's decision. (ECF No. 19-1.) On the same date, Petitioner filed a reply. (ECF No. 20.)

## II.    JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

## III.    DISCUSSION

The parties do not dispute that Petitioner is currently detained under 8 U.S.C. § 1226(a) following his arrest and detention for overstaying his visa. Petitioner initially complained that he was being detained without an individualized custody determination. He has since been provided with such hearing before an immigration judge. Respondents argue the petition should be dismissed or denied, because Petitioner has been granted the relief central to his complaint. (ECF No. 14 at 3.) Respondents further argue that Petitioner has failed to identify a liberty interest to support a due process claim, since Respondents did not release Petitioner after detention and

thereby provide an "implicit promise" that they would not re-detain him absent a material change in circumstances or violation of release conditions. (ECF No. 14 at 4.) As to Petitioner's arguments concerning the hearing itself, Respondents argue Petitioner has avenues of relief, such as an appeal to the Board of Immigration Appeals ("the Board"), that he must first exhaust. (ECF No. 14 at 5.)

Petitioner responds that the bond hearing did not moot the petition, nor did it cure the constitutional deficiency. (ECF No. 15 at 3.) Petitioner argues that exhaustion should be excused in light of Petitioner's mental health conditions. (ECF No. 15 at 4.) He further argues that the evidence does not support the contention that he presents a risk of danger. (ECF No. 15 at 7-8.) Finally, he maintains his argument that his continued detention violates his due process rights. (ECF No. 15 at 8-9.)

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id*. (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

A.    Exhaustion

Respondent contends Petitioner has failed to exhaust his available remedies by failing to seek relief for his claims with the Board of Immigration Appeals prior to seeking a writ of habeas corpus in this court. (ECF No. 14 at 6.) Petitioner responds that exhaustion would be futile because the petition raises constitutional claims that fall outside the competence of the administrative process. (ECF No. 15 at 4.) He further claims that the Board lacks authority to remedy violations of conditions of confinement. (*Id*.)

As a prudential matter, habeas petitioners must exhaust available judicial and administrative remedy remedies before seeking relief. 28 U.S.C § 2241; *see also Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *overruled on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 (2006). Courts may require exhaustion as a prudential matter when

3

"(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (citation omitted); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). However, the exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quotation marks and citation omitted).

In this case, the factors appear to weigh in favor of requiring Petitioner to exhaust his administrative remedies. First, Petitioner takes issue with the findings of the immigration judge in his denial of bond. He contends that the evidence does not support the finding and that the immigration judge failed to take certain evidence into consideration. Such issues could be fairly resolved by the Board, and in fact, reviewing the immigration judge's decision is a primary function of the Board. In addition, Respondent is correct that relaxing the exhaustion requirement would encourage detainees denied bond to immediately bypass the Board and proceed to federal court. Third, allowing the Board to address the deficiencies in the immigration judge's decision would preclude the need for judicial review. Respondent's arguments are persuasive, but because the Court does not find merit to Petitioner's contentions, the Court will proceed to review of the petition.

> B.  Procedural Due Process

> > 1.  Legal Standard

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from

imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

     *2. Analysis*

Having determined that 1226(a) informs the nature of Petitioner's detention, the court evaluates whether his procedural due process rights have been violated. Respondent argues that Petitioner has failed to establish a liberty interest, because the government did not initially detain and then release Petitioner, thereby creating an expectation that release would not be revoked without proper due process. Courts in this district, including this Court, have repeatedly determined that noncitizens possess a liberty interest when they have lived within the country for many years even though they had not previously encountered immigration authorities. *R.P.V. v.*

*Minga Wofford, et al.*, No. 1:26-CV-01010 JLT EPG (HC), 2026 WL 494748, at *2 (E.D. Cal. Feb. 23, 2026); *Velasco v. Chestnut*, No. 1:26-CV-01200 JLT SKO (HC), 2026 WL 542242 at *1 (E.D. Cal. Feb. 26, 2026); *Crispin M.C. v. Noem*, No. 1:25-CV-01487-KES-HBK (HC), 2026 WL 70553 (E.D. Cal. Jan. 8, 2026).

Nevertheless, "the Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

In evaluating a due process claim in immigration detentions like Petitioner's, the Ninth Circuit used the *Mathews* test and assumed (without deciding) that it applied to a due process claim for a second bond hearing in a section 1226(a) detention. *Id*. at 1206-07. Like *Rodriguez Diaz*, Petitioner is subject to § 1226(a) detention, and he was given a bond hearing on March 4, 2026, pursuant to his request under § 1226(a). Thus, the Court finds application of the *Mathews* test in this case appropriate.

Under the *Mathews* test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." *Mathews*, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

In the first factor, the Court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. A noncitizen's private interest in "freedom from prolonged detention" is "unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). Here, Petitioner has been detained for four months. Prior to re-detention, he was at liberty for sixteen months. This permitted him to live with his family, work, and contribute to his

6

community. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Nevertheless, Petitioner's detention period is relatively short compared to the lengths of detention considered in other cases to be "prolonged." *See, e.g., Rodriguez Diaz*, 53 F.4th at 1207 (citing, inter alia, *Diouf v. Napolitano,* 634 F.3d 1081, 1091 (9th Cir. 2011) (detention over one year). It is also less than the combined nine-month period considered to be presumptively reasonable in *Zadvydas* with respect to detention under § 1231(a).

In *Rodriguez Diaz*, the Ninth Circuit further held that "in evaluating the first prong of the *Mathews* analysis, it is not sufficient to simply count the months of detention and leave it at that." 53 F.4th at 1208. Instead, the analysis should consider "[t]he process received during this time, the further process that was available to [the alien], and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered." *Id*. The Ninth Circuit further held that it was "important not to overstate the strength of Petitioner's showing under the first *Mathews* factor." *Id*. at 1213. In this case, Petitioner was given a bond hearing on March 4, 2026, where the immigration judge determined Petitioner presented an unreasonable risk of danger to the community. Thus, the first interest tips in favor of the government.

In the second factor, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where a detainee "has not received any bond or custody redetermination hearing[.]" *Jimenez*, 2020 WL 510347, at *3. In this case, however, Petitioner received a bond hearing where an immigration judge inquired into his detention and concluded he posed a risk of danger. This inquiry took place recently. *Rodriguez Diaz* held that a section 1226(a) detainee who had also received an earlier bond hearing before an immigration judge could not tip this second *Mathews* factor in his favor because "the agency's decision to detain [petitioner] was subject to numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker." 53 F.4th at 1210. So too here. Under Section 1226(a), Petitioner can request another bond hearing before an immigration judge should there be a change

7

in circumstances. Moreover, the appellate options available to Petitioner following his March 4, 2026, detainment hearing mitigate the risk of an erroneous deprivation of rights. *Id*. at 1209.

In his reply brief, Petitioner attacks the bond determination as conclusory, legally insufficient, unsupported by evidence, devoid of individualized analysis, and unresponsive to his health condition and circumstances of detention. (ECF No. 20 at 2-3.) While the Court may not review an immigration judge's discretionary decision on bond, "that discretionary judgment does not include constitutional claims or questions of law." *Martinez v. Clark*, 124 F.4th 775, 782 (9th Cir. 2024).

Here, the immigration judge placed the burden of proof on Petitioner. "The Ninth Circuit has upheld the constitutionality of procedures under § 1226(a) – which governed Petitioner's detention at the time – placing the burden on the non-citizen." *Herrera v. Mayorkas*, Case No. C24-1933-JNW-MLP, 2025 WL 2382093, at *7 (W.D. Wash. May 19, 2025) (*Report & Recommendation, adopted* 2025 WL 2380669, at *1 (W.D. Wash. Aug. 15, 2025) (citing to *Rodriguez Diaz*, 53 F.4th at 1212). "[S]uch burden-shifting would [not] be constitutionally necessary in all, most, or many cases. There is no reason to believe that, as a general proposition, the government will invariably have more evidence than the [non-citizen] on most issues bearing on alleged lack of future dangerousness or flight risk." *Rodriguez Diaz*, 53 F.4th at 1212.

Petitioner attacks the immigration judge's decision as unsupported, because the immigration judge considered a pending misdemeanor allegation in his decision. It is not up to this Court to determine whether this evidence is good enough on a factual basis. *See Sales v. Johnson*, 323 F. Supp. 3d 1131, 1138-39 (N.D. Cal. 2017) ("To the extent that Petitioner asks the Court to second-guess the IJ's weighing of the evidence, that claim is directed solely to the IJ's discretion and is unreviewable."). Petitioner also attacks the decision for failing to consider Petitioner's mental health deterioration. Yet, the immigration judge need not discuss every piece of evidence, *Larita-Martinez v. INS*, 220 F.3d 1092, 1096 (9th Cir. 2000), and the record contains no glaring red flags such as "misstating the record [or] failing to mention highly probative or potentially dispositive evidence." *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). Furthermore, Petitioner has other, proper outlets to challenge the immigration judge's decision, such as an

appeal to the Board of Immigration Appeals. While Petitioner disagrees with the outcome, the Court finds that he has not shown that his bond hearing was constitutionally defective. Thus, the Court concludes that the probable value of offering a further bond hearing shortly after his previous hearing is low. The second factor favors the government.

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. The government's aim of "protecting the public from dangerous criminal aliens" and "increas[ing] the chance that, if ordered removed, the aliens will be successfully removed" are "interests of the highest order that only increase with the passage of time." *Rodriguez Diaz*, 53 F.4th at 1208 (quotations omitted). As other courts have recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Director*, No 19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. March 25, 2020) (collecting cases). Here, the government's interest is tied to Petitioner's prior criminal history and a recent determination by an immigration judge that he posed a risk of danger.  Given (1) the recency of Petitioner's bond hearing, (2) the government's interests in protecting the public and assuring Petitioner's presence for removal, and (3) the fiscal and administrative burdens on the government in conducting another bond hearing so shortly after Petitioner's last hearing, the government's interests outweigh Petitioner's interests.

On balance, the *Mathews* factors weigh in the government's favor and outweigh Petitioner's interest in a second bond hearing. Should circumstances change, he can request a subsequent custody hearing. Accordingly, the Court recommends denying Petitioner's procedural due process claim.

C.    Substantive Due Process

1.  *Legal Standard*

"[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *Salerno*, 481 U.S. at 746 (citations omitted).

9

In the criminal context, the Ninth Circuit has held that "[a] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (citing *Salerno*, 481 U.S. at 747). "[W]hile the existence of some threshold of per se due process violation may be 'undisputed,' it has also never been clearly delineated in the context of immigration detention." *Doe v. Becerra*, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) (internal citation omitted), *abrogated on other grounds by Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024).

### 2. Analysis

Petitioner contends that his continued detention is arbitrary, unjustified and punitive. He argues that he suffers from a mental health condition, and his detention is causing ongoing harm including psychological deterioration. He supplies a declaration in which he states he is experiencing severe emotional distress, anxiety, and a sense of hopelessness leading to thoughts of self-harm. (ECF No. 15-1 at 2.) He states he has made numerous requests for mental health assistance. (*Id*.) He states that after he made these requests, detention staff began providing him with medication. (*Id*. at 3.) He states he continues to experience emotional distress. (*Id.*) He states he is also experiencing additional stress and anxiety due to his failure to address ongoing important legal matters in his life, such as his pending criminal case, a pending eviction case, and his dissolution case. (*Id.* at 3-4.)

The court finds that Petitioner fails to establish that his detention serves "no regulatory purpose that can rationally be assigned to the detention" or that his detention is "excessive in relation to its regulatory purpose" such that the Court may conclude the detention is punitive. *Torres*, 995 F.3d at 708 (citing *Salerno*, 481 U.S. at 747). Petitioner does not allege in his papers that his detention was motivated by any intent of Respondents to punish him. Indeed, as the District Court noted in its order denying a temporary restraining order, Petitioner admits that medical staff have responded to his requests for mental health assistance by supplying him with medication. While the court sympathizes with Petitioner in his complaints of emotional distress and anxiety suffered from detention and his related inability to attend to his legal matters, such

complaints described by Petitioner are shared by all detainees.  The Supreme Court has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." *Demore v. Kim*, 538 U.S. 510, 531 (2003); *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure"). Moreover, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522, *quoted in Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

Following the decision of a district court judge in the Northern District of California, other courts, including at least one judge of this Court, have applied a multi-factor test[1] when considering a habeas claim of substantive due process violation brought by an immigration detainee. *Doe v. Chestnut*, 810 F.Supp.3d 1169, 1179, No. 1:24-cv-00943-EPG-HC (E.D. Cal. Nov. 20, 2025) (citing *Doe v. Becerra*, 732 F. Supp. 3d 1071 (N.D. Cal. 2024)); *see also Guillermo M.R. v. Albarran, et al.*, No. 25-CV-05436-RFL, 2026 WL 1256874, at *3 (N.D. Cal. May 7, 2026). Because Petitioner here does not cite *Doe v. Becerra* and does not argue that the Court should consider the multi-factor test defined in that nonprecedential opinion, the undersigned does not undertake an analysis pursuant to *Doe* except to note that several of the factors would seem to weigh in favor of finding no substantive due process violation. Specifically, the length of Petitioner's detention is relatively brief, there is no indication of any intentional delay by the government, and an immigration judge has already determined that detention is warranted to prevent community danger.

---

[1] In *Doe v. Becerra*, the court employed a five-factor balancing test to determine whether immigration detention violates due process. Those factors include:
> (1) the length of detention and whether it is excessive in relation to its regulatory purpose;
> (2) the government's contribution to any delay;
> (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger;
> (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and
> (5) the conditions of detention and how they compare to conductions under which pretrial criminal detainees or people convicted of crimes are held.

723 F.Supp.3d at 692.

Accordingly, the undersigned will recommend that the Court deny Petitioner's petition as to his substantive due process claim.

IV.    CONCLUSION & RECOMMENDATION

For the foregoing reasons, the Court recommends that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. *Id*. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    **May 15, 2026**                    _____
                                               UNITED STATES MAGISTRATE JUDGE

12